955 So.2d 386 (2006)
Benny AGUILAR a/k/a Benny Soliz Aguilar, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01273-COA.
Court of Appeals of Mississippi.
December 5, 2006.
Rehearing Denied May 1, 2007.
*388 Helen Bagwell Kelly, Batesville, for Appellant.
Office of the Attorney General by Deirdre McCrory, for Appellee.
Before LEE, P.J., CHANDLER and ROBERTS, JJ.
CHANDLER, J., for the Court.
¶ 1. After a jury trial, Benny Aguilar was convicted in the Circuit Court of Panola County of fondling a child and sentenced to fifteen years in the custody of the Mississippi Department of Corrections. Aguilar appeals, arguing (1) the evidence was insufficient to support the verdict; (2) the verdict was against the overwhelming weight of the evidence; (3) the court erred in restricting Aguilar's cross-examination of the victim; (4) the court erred in qualifying Jan Sample as an expert witness; (5) the court erred in allowing Sample to remain in the courtroom as an exception to the sequestration rule; and (6) the court erred in allowing certain witnesses to testify during the sentencing phase.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On or about October 24, 2001, the Mississippi Department of Human Services (DHS) in Panola County received a *389 report that K.P.,[1] age fourteen, had been fondled by her stepfather, Aguilar. Bonnie Jean Rogers, a social worker with DHS, interviewed K.P. and then contacted Officer Mark Whitten with the Panola County Sheriff's Department. DHS delayed further investigation upon learning that Aguilar had been deployed to Bosnia with his National Guard unit. In April 2002, Rogers discovered that Aguilar had returned to the home. On April 15, 2002, Rogers met with Officer Whitten, Aguilar, his attorney, and K.P.'s mother. At this meeting, Aguilar agreed that he was not to be alone with K.P. and that he would move out of the family home. Shortly thereafter, Aguilar returned to the family home.
¶ 4. On September 3, 2004, another DHS social worker, Katherine Robinson, conducted a follow-up interview with K.P. at which K.P. reported that there had been further abuse. On November 4, 2004, Aguilar was indicted in a four-count indictment. Two counts were severed. Aguilar was tried on one count of fondling K.P. in May 2001 in violation of Mississippi Code Annotated section 97-5-23 and one count of sexual battery of K.P. on September 9, 2003 in violation of section 97-3-95(2). The trial occurred on May 31, 2005 and ended on June 2, 2005.
¶ 5. At the trial, K.P. testified about the two incidents. K.P. stated that, in May 2001, the family moved from Pope to Batesville. K.P. was fourteen years old at that time. K.P. rode in a van with Aguilar to deliver a load of belongings to the new house. It was dark, and no one else was in the van with them. Aguilar was driving and K.P. was in the front passenger seat. K.P. testified that Aguilar drove down a back road and slowed down. Stating, "you owe me," Aguilar forced his hands inside K.P.'s shirt and touched her breasts. K.P. began to cry. When they approached the new house, Aguilar stopped touching K.P. and told her not to tell anyone or "it would get worse the next time." Several witnesses testified that, when K.P. arrived at the new house that night, her behavior was normal. K.P. testified that she did not tell anyone about the incident because she was frightened of Aguilar.
¶ 6. K.P. further testified that, in September 2003, Aguilar was living at Fort Benning, Georgia. K.P. was sixteen years old at that time. K.P.'s Chevrolet Blazer broke down and her mother called Aguilar to assist in repairing the vehicle. Aguilar returned from Georgia. On September 9, 2003, Aguilar drove K.P. to his mother's house on Curtis Road in Panola County to pick up a truck for K.P. to use as temporary transportation. K.P. testified that Aguilar was driving his pickup truck and K.P. was in the passenger seat. It was dark, and no one else was in the vehicle. According to K.P., Aguilar asked her why she had reported the May 2001 incident and if she would tell if he did it again. K.P. said, "yes." Then, Aguilar began driving slowly. He forced his hand under K.P.'s shirt. K.P. further testified that Aguilar stopped the truck, exited, and walked around to the passenger's side. K.P. testified that Aguilar opened the passenger door, jerked K.P.'s pants off, and raped her. K.P. stated that she did not tell anyone about the rape because Aguilar had said he would kill her if she told.
¶ 7. Jan Sample, with Family Crisis Services in Oxford, Mississippi, testified that she conducted a forty-one minute forensic interview with K.P concerning the allegations of abuse. Sample testified that the purpose of a forensic interview is to determine if something has happened to a child and, if so, what exactly occurred. Sample stated that there was no indication during *390 the interview that K.P. had been coached. She said that K.P. related the same facts consistently and that she provided a high level of detail. Sample opined that K.P.'s interview was consistent with that of a child who had been abused.
¶ 8. Aguilar testified. He acknowledged that in May 2001 he and K.P. rode alone together to the new house during the move, but denied that he had fondled K.P. or had behaved inappropriately toward her. Aguilar also acknowledged that, on September 9, 2003, he drove K.P. to his mother's house to pick up a truck. Aguilar denied that he had sexual intercourse with K.P. or had behaved inappropriately toward her. Aguilar speculated that K.P. had made up a tale of sexual abuse for personal gain and to retaliate against him because he was a strict disciplinarian.
¶ 9. The jury found Aguilar guilty of fondling. The jury could not agree on a verdict as to sexual battery and the court declared a mistrial as to that count. After a sentencing hearing, the court sentenced Aguilar on the fondling conviction to the maximum penalty of fifteen years.

LAW AND ANALYSIS
I. THE STATE PROVIDED INSUFFICIENT EVIDENCE AND FAILED TO PROVE A PRIMA FACIE CASE AS CHARGED IN THE INDICTMENT.
II. THE COURT BELOW ERRED IN DENYING DEFENSE JURY INSTRUCTION D-1.
¶ 10. Aguilar argues that the trial court erred in denying his motion for a JNOV and his request for a peremptory instruction. Both of these arguments challenge the sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). We consider the correctness of the trial court's ruling on the sufficiency of the evidence based on the evidence before the court at the time the last challenge was made. Id. Aguilar last challenged the sufficiency of the evidence with his motion for a JNOV.
¶ 11. In reviewing the denial of a motion for a JNOV, this Court views the credible evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the State. Id. If the evidence is of such quality and weight that reasonable jurors could find the defendant guilty beyond a reasonable doubt, then we will affirm. Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005). But, we must reverse if the facts and inferences "`point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty.'" Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). "Matters regarding the weight and credibility of the evidence are to be resolved by the jury." McClain, 625 So.2d at 778.
¶ 12. Mississippi Code Annotated section 97-5-23(2) (Rev.2006) provides:
"Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child younger than himself or herself and under the age of eighteen (18) years who is not such person's spouse, with or without the child's consent, when the person occupies a position of trust or authority over the child shall be guilty of a felony. . . . A person in a position of trust or authority over a child includes without limitation a child's . . . stepparent. . . . "
The evidence showed that, in May 2001, Aguilar was over the age of eighteen and *391 K.P. was younger than Aguilar and under the age of eighteen. The evidence further showed that Aguilar was K.P.'s stepfather and, therefore, occupied a position of trust and authority over K.P.
¶ 13. Aguilar challenges the sufficiency of the evidence that he touched, handled or rubbed K.P. for the purpose of gratifying his lust or indulging his depraved licentious sexual desires. Aguilar points out that there was no physical evidence and that the strongest evidence against him was K.P.'s own testimony, which was uncorroborated. Aguilar admits that the jury was entitled to weigh the conflicting testimony, but argues that K.P.'s testimony was incredible and, therefore, was legally insufficient to sustain his conviction.
¶ 14. It has been held that the unsupported testimony of a sex crime victim is sufficient to sustain a conviction if that testimony is not discredited or contradicted by other credible evidence, particularly when the victim's conduct is consistent with that of a person who has been the victim of a sex crime. Collier v. State, 711 So.2d 458, 462 (Miss.1998). The victim's physical and mental condition after the incident and the fact that the victim immediately reported the incident are acceptable as corroborating evidence. Id. In Riley v. State, 797 So.2d 285, 288(¶ 10) (Miss.2001), Riley was convicted of fondling a mentally deficient thirteen year old child. The child was alone with Riley at the time of the incident. Id. at 286(¶ 2). The victim's trial testimony differed slightly from her statement to the police. Id. Riley argued that her testimony was incredible and the evidence was insufficient to sustain his conviction. Id. at 288(¶ 10). The court observed that the child's testimony was corroborated by that of her mother, who stated that after the incident took place, the child went into the mother's room and told her about the incident. Id. The mother further testified that the child was frightened. Id. The court found that the testimony of the child and of her mother were sufficient to uphold Riley's conviction. Id. at 288(¶ 11).
¶ 15. Aguilar contends that the testimony of K.P. was incredible and insufficient to sustain his conviction because K.P. did not immediately report the fondling incident and the witnesses who saw her after the incident testified that her demeanor and deportment appeared normal. Aguilar contends that K.P.'s behavior was not consistent with that of a sexual abuse victim. However, Sample testified that it can be difficult for child sexual abuse victims to talk about the abuse. She testified that children react differently to sexual abuse, and that some victims do not immediately report incidents of abuse due to feelings of fear, guilt, and shame. K.P.'s testimony was that she did not immediately report the fondling incident because she was afraid of Aguilar. Sample testified that K.P.'s failure to immediately report the abuse was not inconsistent with the behavior of someone who has been sexually abused. The facts that K.P. did not immediately report the abuse and appeared normal to witnesses who saw her after the abuse did not render her testimony legally insufficient. The evidence was sufficient to enable a reasonable juror to find beyond a reasonable doubt that Aguilar touched, handled, or rubbed K.P. for the purpose of gratifying his lust or indulging his depraved licentious sexual desires. The trial court did not err by denying Aguilar's motion for a JNOV.
III. THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 16. Aguilar contends that he is entitled to a new trial because the verdict was against the overwhelming weight of *392 the evidence. A motion for a new trial is addressed to the discretion of the trial court. Bush, 895 So.2d at 844(¶ 18). The motion should be granted only if the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Id. On review of the denial of a motion for a new trial, we view the evidence in the light most favorable to the verdict, and will reverse only in exceptional cases where the evidence preponderated heavily against the verdict. Id.
¶ 17. Viewing the evidence in the light most favorable to the verdict, K.P. testified that Aguilar fondled her while they were alone in a van. Aguilar admitted that he was alone with K.P. at the relevant time. K.P. testified that she did not report the fondling incident for several months because she was afraid of Aguilar. K.P. also testified that she was raped by Aguilar two years later. Sample testified that K.P.'s interview was consistent with someone who had been sexually abused due to K.P.'s consistency and K.P.'s ability to provide details. The evidence did not preponderate so heavily against the verdict as to require a new trial. This issue is without merit.
IV. THE COURT BELOW ERRED IN NOT ALLOWING THE DEFENSE FULL CROSS-EXAMINATION OF K.P.
¶ 18. Aguilar next argues that the trial court erroneously limited his cross-examination of K.P. in violation of the Confrontation Clause of the Sixth Amendment and Article 3, section 26 of the Mississippi Constitution of 1890. Specifically, Aguilar argues that the trial court erred by limiting his questioning of K.P. about her past sexual conduct. During direct examination of K.P. concerning the sexual battery, K.P. stated that Aguilar "took something from me that I can never get back, something that I was supposed to give somebody special." The following occurred during Aguilar's cross-examination of K.P.:
Q. Who is Jeremy?
A. Jeremy is an ex-boyfriend.
Q. Was he special?
Mr. Kelly: Objection, Your Honor.
The Court: Sustained.
Q. Were you and Jeremy supposed to go to your prom?
A. We were.
Q. Were ya'll to get a motel room?
Mr. Kelly: Objection, Your Honor.
The Court: Sustained. Approach the bench.
A bench conference occurred that was not recorded. During a break in the testimony, Aguilar put on the record that he had been trying to discredit K.P.'s testimony that Aguilar had taken "something from [her]" by showing that K.P. had been sexually active with other men. The trial court found that under the Rules of Evidence, particularly Mississippi Rule of Evidence 412, the testimony was inadmissible.
¶ 19. This Court reviews the rulings of the trial court admitting or excluding evidence for abuse of discretion. Ladnier v. State, 878 So.2d 926, 933(¶ 27) (Miss.2004). An error in the admission or exclusion of evidence is not grounds for reversal unless the error affected a substantial right of a party. Id.; M.R.E. 103(a). Mississippi Rule of Evidence 412(a) provides that reputation or opinion evidence about the past sexual behavior of an alleged sexual offense victim is inadmissible. Rule 412(b) provides that evidence of a victim's past sexual behavior other than reputation or opinion evidence is inadmissible unless the evidence is:
(1) Admitted in accordance with subdivisions (c)(1) and (c)(2) hereof and is constitutionally required to be admitted; or

*393 (2) Admitted in accordance with subdivision (c) hereof and is evidence of
(A) Past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen, pregnancy, disease, or injury; or
(B) Past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior with respect to which a sexual offense is alleged; or
(C) False allegations of past sexual offenses made by the alleged victim at any time prior to the trial.
"M.R.E. 412 is designed to prevent the introduction of irrelevant evidence of the victim's past sexual behavior to confuse and inflame the jury into trying the victim rather than the defendant." Hughes v. State, 735 So.2d 238, 273 (¶ 153) (Miss. 1999).
¶ 20. Rule 412(c) provides that, if the accused wishes to offer evidence of specific instances of the victim's past sexual behavior under subdivision (b), the accused must make a written motion, with a written offer of proof, not later than fifteen days before the scheduled trial date. However, the court may permit the motion to be made at a later time, including during the trial, if the court determines that the issue to which the evidence relates has newly arisen in the case, or if the court determines that the evidence is newly discovered and could not have been obtained earlier in the exercise of due diligence. M.R.E. 412(c)(1). If the court determines that the offer of proof contains evidence described in subdivision (b), then the court must hold a hearing in chambers to determine if the evidence is admissible. M.R.E. 412(c)(2). If the court concludes that the evidence is relevant and the probative value outweighs the danger of unfair prejudice, then the evidence is admissible to the extent that an order of the court specifies the evidence that may be offered and the areas in which the victim may be cross-examined. M.R.E. 412(c)(3).
¶ 21. Aguilar argues that the court's limitation of his cross-examination of K.P. about her past sexual behavior violated his fundamental constitutional right to impeach K.P.'s credibility. Aguilar admits that the evidence did not fit any of the three categories enumerated in Rule 412(b)(2). However, Aguilar contends that the cross-examination would have shown that K.P. was lying about never having had sex and thus the evidence was impeaching and "constitutionally required to be admitted" under Rule 412(b)(1).
¶ 22. Aguilar recognizes that, for admissibility under Rule 412(b)(1), the other evidence of past sexual behavior must not only be constitutionally required to be admitted but must be admitted in accordance with subdivisions (c)(1) and (c)(2), and that he did not comply with those subsections. Since Aguilar failed to comply with subsections (c)(1) and (c)(2), there was no error in the court's limitation of Aguilar's cross-examination of K.P. about her past sexual history. Levy v. State, 724 So.2d 405, 409(¶ 18) (Miss.Ct.App.1999). This issue is without merit.
V. THE COURT BELOW ERRED IN QUALIFYING JAN SAMPLE AS AN EXPERT WITNESS.
¶ 23. The State offered Sample as an expert witness in the field of forensic interviewing and Aguilar conducted voir dire of Sample as to her qualifications. Then, without objection by Aguilar, the court accepted Sample as an expert in the field in which she was offered pursuant to Mississippi Rule of Evidence 702. On appeal, *394 Aguilar attacks Sample's credentials in the field of forensic interviewing and argues that the trial court erred by allowing Sample to testify as an expert in the field. Because Aguilar failed to object at the trial to the qualification of Sample as an expert, this issue is waived for consideration on appeal. McBeath v. State, 739 So.2d 451, 454(¶ 11) (Miss.Ct.App.1999).
VI. THE COURT BELOW ERRED IN ALLOWING JAN SAMPLE TO REMAIN IN THE COURTROOM AS AN EXCEPTION TO THE SEQUESTRATION RULE.
¶ 24. Aguilar argues that the trial court erred by allowing Sample to remain in the courtroom for the duration of the trial pursuant to Mississippi Rule of Evidence 615(3). Rule 615 provides:
At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.
Witness sequestration is a matter of right except for the three categories of persons listed under the rule. Douglas v. State, 525 So.2d 1312, 1316 (Miss.1988). Under Rule 615(3), an expert witness may be permitted to remain in the courtroom during the testimony of other witnesses. Chapin v. State, 812 So.2d 246, 249(¶ 6) (Miss.Ct.App.2002). This practice complements Rule 703, which allows an expert to base an opinion on facts or data "perceived by or made known to him at or before the hearing."
¶ 25. The administration of the sequestration rule is a procedural matter within the trial court's sound discretion. Collins v. State, 361 So.2d 333, 334 (Miss. 1978). The prosecution requested that Sample be permitted to remain in the courtroom to assist the prosecution in formulating cross-examination and so she could listen to the defense case and testify in rebuttal. The court permitted Sample to remain in the courtroom during the testimony both to assist the prosecutor and to enable her to render opinions based on the testimony. As it turned out, Sample testified during the State's case-in-chief but was not called in rebuttal. Some of her opinion testimony was based upon the earlier testimony of K.P.
¶ 26. Aguilar argues that the trial court's ruling was an abuse of discretion because Sample's remaining in the courtroom enabled her to give testimony that was unduly cumulative of that of other witnesses, presumably K.P. We find no abuse of discretion. Sample's remaining in the courtroom allowed her to formulate opinion testimony pursuant to Rule 703. And, Sample's testimony was not unduly cumulative of K.P.'s testimony. This issue is without merit.
VII. THE COURT BELOW ERRED IN ALLOWING TESTIMONY OF STATE WITNESSES IN THE SENTENCING PHASE ON MATTERS NOT BEFORE THE COURT.
¶ 27. During the sentencing phase, the trial court heard the testimony of several other alleged victims of sexual abuse by Aguilar. At the conclusion of the hearing, the court sentenced Aguilar to fifteen years, the maximum penalty. See Miss.Code Ann. § 97-5-23(2) (Rev.2006). Without citation to authority, Aguilar contends that the alleged victims' testimony *395 was inadmissible at the sentencing hearing because it concerned matters not before the court, had no substantial indicia of reliability, and was clearly prejudicial to Aguilar.
¶ 28. Aguilar's failure to provide any authority for his argument has waived any error concerning this issue. Holloman v. State, 656 So.2d 1134, 1141 (Miss. 1995). Notwithstanding the waiver, Aguilar's argument is without merit. During sentencing, the trial court is not limited to the consideration of the evidence that was presented of record during the trial. Jackson v. State, 551 So.2d 132, 149 (Miss. 1989).
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY OF CONVICTION OF FONDLING AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAY $100 TO THE MISSISSIPPI CRIME VICTIMS FUND IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PANOLA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. GRIFFIS, J., CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY SOUTHWICK, ISHEE AND ROBERTS, JJ.
GRIFFIS, J., Concurring:
¶ 30. I concur but write separately to address one issue discussed by the majority.
IV. The court below erred in not allowing the defense full cross-examination of K.P.
¶ 31. Aguilar argues that he was deprived his constitutional right to cross-examine K.P. on her statement that Aguilar caused her to lose her virginity. I write not to disagree with the majority's conclusion but to expand on the exact details of how this testimony was admitted and to discuss the proper procedure if it occurs again in the future.
¶ 32. At trial, K.P. testified that Aguilar fondled her and raped her. Thus, K.P. provided detailed evidence to support the charges that Aguilar committed the crimes of fondling and sexual battery. At the conclusion of her direct examination, Robert Kelly, the prosecutor, asked K.P. a number of questions about the various individuals, including the grand jury and now the trial jury, to whom she has had to tell her story. The following is an excerpt of the final question that Kelly asked K.P. on direct examination and the first couple of questions asked by Clay Vandenberg, Aguilar's trial counsel. Kelly concluded his direct examination of K.P. by asking:
Q. You tell Mr. Benny Aguilar what it means to you what he did to you.
A. I can't even put into word what he did to me. I mean he took something from me that I can never get back, something that I was supposed to give somebody special. I just don't understand how somebody can go around saying that you love someone and you tell everybody that this is my daughter, and then you turn around and you hurt them in just an unbelievable amount and then not feel any shame for it.
Mr. Kelly: Tender the witness.
The Court: Cross-examination.
By Mr. Vandenburg (Defense counsel):
Q. Who is Jeremy?
A. Jeremy is an ex-boyfriend.
Q. Was he special?
Mr. Kelly: Objection, Your Honor.
The Court: Sustained.

*396 Q. Were you and Jeremy supposed to go to your prom?
A. We were.
Q. Were y'all to get a motel room?
Mr. Kelly: Objection, Your Honor.
The Court: Sustained. Approach the bench.
¶ 33. A bench conference was then held. No record was made of the conference. Later in the trial, the court allowed a proffer of evidence. The following occurred:
The Court: Mr. Vanderburg, you had asked some questions earlier today concerning prior sexual activity apparently of that witness. Is there anything about it you wanted to put in the record at this time?
Mr. Vanderburg: Your Honor, I'll just put it on the record that on direct examination [K.P.] was asked . . . Mr. Kelly stood up here and asked her to tell Mr. Aguilar and myself how it made her feel, and she testified that he took something from me I can't get back. I was supposed to give that to someone special. And I think the questions would show that she has been sexually involved with other men.
The Court: So the focus of your questions went to other sexual activity of [K.P.] with other people? Is that the direction of your question?
Mr. Vanderburg: One was her boyfriend Jeremy, who she had planned on getting a motel room at the prom. That was one. Another one with some other individualsI didn't go into it after your rulingsome other individuals that she had been sexually involved with.
The Court: We did have a conference at the bench which was not of record, and that was the reason I wanted to give you an opportunity to make those statements. But I did advise you at the bench that the Court was not going to allow you to question her concerning past sexual behavior with someone unrelated to this.
Clearly under our rules, particularly Rule 412, I think that would have been improper, irrelevant, prejudicial, and not admissible, so that's the basis for the Court's ruling on those questions. . . .
¶ 34. The prosecutor's final question sought an answer that was not relevant to the crimes alleged against Aguilar. Clearly, under Rule 401 of the Mississippi Rules of Evidence, the prosecutor's question "You tell Mr. Benny Aguilar what it means to you what he did to you"does not attempt to elicit "relevant evidence." The direct examination of the victim is not the time for the State to ask the victim to address the accused.
¶ 35. Indeed, I can think of no possible response that K.P. could have provided to that question that would have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. "Evidence which is not relevant is not admissible." M.R.E. 402. Had defense counsel objected, I would expect the trial court to have sustained the objection, under M.R.E. 401 and 402, and not allowed K.P. the opportunity to introduce evidence that is not relevant.
¶ 36. As an appellate court, we have no way of knowing whether this question and answer was prepared in advance of trial or whether it was simply asked spontaneously to see where the witness would go with her answer. Regardless, this one question too many would not have established a fact in consequence on the charges of fondling or sexual battery. It does indicate that the State, whether intended or not, tried to put in evidence the victim's prior sexual conduct, at least the lack thereof. Even if *397 it were considered relevant, under M.R.E. 403, the fact that Aguilar may have taken her virginity is clearly more prejudicial than probative. It could only seek to enrage the jury against Aguilar or create sympathy from the jury toward K.P.
¶ 37. My concerns notwithstanding, Aguilar's counsel did not object. Thus, any error from his failure to object is waived. M.R.E. 103(a)(1). See Young v. State, 425 So.2d 1022, 1027-28 (Miss.1983); Luther T. Munford, Mississippi Appellate Practice § 3-2 (2002).
¶ 38. My purpose in writing separately has more to do with how Aguilar's counsel reacted to this evidence. Vanderburg, a very capable defense lawyer, seized the opportunity to argue that the State opened the door. He immediately launched a counter-offensive to attack K.P.'s credibility or sought to introduce the specifics of her prior sexual conduct. The court did not allow K.P. to answer, and permitted Vanderburg an opportunity at the next break for a proffer of evidence.
¶ 39. Aguilar admits that Rule 412(a) of the Mississippi Rules of Evidence provides that "in a criminal case in which a person is accused of a sexual offense against another person, reputation or opinion evidence of the past sexual behavior of an alleged victim of such sexual offense is not admissible." But, he argues that evidence of past sexual behavior of the alleged victim may be admissible if "[a]dmitted in accordance with subdivisions (c)(1) and (c)(2) hereof and is constitutionally required to be admitted." M.R.E. 412(b)(1).
¶ 40. Aguilar then urges this Court to hold that it was plain error for Aguilar's counsel to not have followed the procedural requirements of Rule 412(c)(1) or (c)(2). Aguilar claims that the evidence sought was not character, reputation or opinion evidence but it was to elicit motive and impeach the credibility of K.P., under M.R.E. 607.
¶ 41. The proper procedure is in Rule 412(c)(1). This procedure was not followed. The rule includes an exception "that the court may allow the motion to be made at a later date, including during trial, if the court determines . . . that the issue to which such evidence relates has newly arisen in the case." Rather than simply launch into a counter-offensive and introduce evidence of prior sexual acts with one of the victim's boyfriends, under Rule 412(c)(1), defense counsel was required to make a motion that asked the court for a hearing under Rule 412(c)(2) so that the court could then decide what evidence, if any, should be admitted under Rule 412(c)(3).
¶ 42. Defense counsel did not seek to follow the clearly defined procedure of Rule 412(c). This matter was not presented to the trial court and should not be considered on appeal.
¶ 43. Furthermore, I do not believe it rises to the level of plain error because K.P.'s testimony could have prejudiced the jury on the sexual battery charge and not the fondling charge. A finding of plain error is necessary when a party's fundamental rights are affected, and the error results in a manifest miscarriage of justice. Williams v. State, 794 So.2d 181, 187(¶ 23) (Miss.2001). To determine if plain error has occurred, we must determine "if the trial court has deviated from a legal rule, whether that error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial." Cox v. State, 793 So.2d 591, 597(¶ 22) (Miss.2001); Porter v. State, 749 So.2d 250, 261(¶ 36) (Miss. Ct.App.1999).
Since the jury returned a guilty verdict on the fondling charge and no verdict on the sexual battery charge, I am of the *398 opinion that this issue was not plain error. Therefore, I would affirm.
SOUTHWICK, ISHEE AND ROBERTS, JJ., JOIN THIS OPINION.
NOTES
[1] We have changed the name of the minor child victim in order to protect her identity.