# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2012-KA-01389-COA

**JEREMY WADE HOLLOWAY**                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

DATE OF JUDGMENT:            05/21/2012
TRIAL JUDGE:                 HON. JOHN HUEY EMFINGER
COURT FROM WHICH APPEALED:   RANKIN COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:     CLARENCE TERRELL GUTHRIE III
                             TODD A. COKER
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: LISA L. BLOUNT
DISTRICT ATTORNEY:           MICHAEL GUEST
NATURE OF THE CASE:          CRIMINAL - FELONY
TRIAL COURT DISPOSITION:     CONVICTED OF TWO COUNTS OF
                             SEXUAL BATTERY AND ONE COUNT OF
                             RAPE AND SENTENCED TO TWO
                             CONCURRENT TERMS OF THIRTY
                             YEARS FOR THE SEXUAL-BATTERY
                             COUNTS AND A CONCURRENT TERM OF
                             FORTY YEARS FOR THE RAPE COUNT,
                             WITH TEN YEARS SUSPENDED AND FIVE
                             YEARS OF SUPERVISED PROBATION,
                             ALL IN THE CUSTODY OF THE
                             MISSISSIPPI DEPARTMENT OF
                             CORRECTIONS
DISPOSITION:                 AFFIRMED – 09/15/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., BARNES AND FAIR, JJ.**

**IRVING, P. J., FOR THE COURT**:

¶1.     A Rankin County jury found Jeremy Wade Holloway guilty of two counts of sexual

battery and one count of rape. The circuit court sentenced him to two concurrent terms of

thirty years for the sexual-battery counts and to a concurrent term of forty years for the rape count, with ten years suspended and five years of supervised probation, all in the custody of the Mississippi Department of Corrections (MDOC).

¶2.    On appeal, Holloway argues that (1) the circuit court erred in excluding certain evidence; (2) that the evidence presented was insufficient to prove beyond a reasonable doubt that he committed the offenses; (3) the circuit court abused its discretion in denying his motion for a new trial; and (4) the cumulative effect of the errors mandates reversal of his convictions.

¶3.    Finding no error, we affirm Holloway's convictions and sentences.

FACTS

¶4.    On the night of February 15, 2011, Ellis Wilkerson and his girlfriend, Catherine Branch,[1] arrived at the Brandon City Park, where they walked along a trail onto a bridge located toward the back of the park. While the couple was on the bridge, a man, wearing a ski mask and holding a gun, appeared from the bushes and ordered them to get on the ground, and, as Catherine began to lie down, he grabbed her by her hair and dragged her up a hill. There, he forced her to perform oral sex on him and then disappeared. Catherine vomited, and as she was recovering from this assault, a second assailant, later identified as Holloway, Wilkerson's roommate, appeared wearing a mechanic's jumpsuit and a mask. He pointed

---

[1] We have substituted a pseudonym for the name of the sexual-assault victim to help protect her identity.

2

a gun at Catherine and also forced her to perform oral sex on him. Afterwards, he vaginally raped her and then forced her to perform oral sex on him once again. After the assault, Holloway told Catherine to stay on the ground and not to look at him. In the meantime, the first assailant and Wilkerson came up the hill where Holloway and Catherine were. One of the assailants punched Wilkerson, and the two assailants left.

¶5.     After lying on the ground for about thirty minutes, Wilkerson and Catherine went to the nearby Kroger parking lot, where Catherine's car was parked. Catherine asked Wilkerson if they should go to the police, and he told her that the assailants had informed him that they would be killed if they reported the assault. Catherine then asked Wilkerson if she could stay with him, but he refused. After Wilkerson left, Catherine got into her car and started to drive toward her home. However, reluctant to go home, she went to the Pearl Police Department (PPD) instead and reported the assault. She informed the police that she had been sexually assaulted at the park. The PPD informed the Brandon Police Department (BPD), and officers from the BPD escorted Catherine to the University of Mississippi Medical Center (UMMC). There, Catherine was examined, and nurse Kelly Burke administered a rape kit to her.

¶6.     While Catherine was at UMMC, BPD Officer David Smith went to Wilkerson's apartment to speak with him because, at that time, he believed that Wilkerson was also a victim. Holloway answered the door and helped Officer Smith locate Wilkerson, who was not at the apartment at the time. Officer Smith later spoke separately with Wilkerson and Holloway at the BPD. Also, Holloway gave Officer Smith permission to search his cell

3

phone. Officer Smith looked through the phone and noticed phone-call traffic between Holloway, Fortenberry, and Wilkerson between 10:30 p.m. and 10:45 p.m. on February 15, 2011. However, at that point, all three men were free to leave.

¶7.    At 5:00 a.m. the next morning, Officer Smith interviewed Catherine, who had been taken to the BPD after completion of her examination at UMMC. Based on his investigation and the description that Catherine gave of one of her assailants— "tall with long hair and . . . skinny"—Officer Smith obtained a search warrant for Holloway's DNA. On February 17, 2011, Holloway gave oral and written statements to Officer Smith, submitted a buccal swab for DNA testing, and was, subsequently, arrested. Also, Holloway consented to a search of his and Wilkerson's apartment. During the search, Officer Smith retrieved a pistol inside a holster and a ski mask that Holloway admitted to using during the assault on Catherine.

¶8.    In his written statement, Holloway wrote:

> My TV ended up getting knocked off [the] wall[;] Ellis [Wilkerson] felt bad[,] and[,] between David [Fortenberry] and himself[,][Wilkerson] came up with a plan to make a fake rape scenario to get back at [Catherine] for the TV[,] and we were told to hide in [the] bushes and wait for them to walk by and David approached her with [a] bb gun and told her to get down[;] . . . then I was next and I told her to take [her] pants off[,] . . . and then she claimed . . . rape[] . . . . .

Officer Smith stated that during his interview with Holloway, Holloway "was a little upset that [Catherine] did not - - [Catherine] didn't put up more resistance, and it would have felt better to him if he, at least, had to have forced her to have sex. And [Holloway] felt that it

4

was consensual because it was so easy."

¶9.     As stated, Holloway was indicted, tried, and convicted of two counts of sexual battery and one count of rape.[2]  Holloway filed a post-trial motion, which was denied by the circuit court.  Following the denial of Holloway's post-trial motion, he instituted this appeal, but later filed a motion with this Court seeking a stay of the appeal and a remand of the case to the circuit court for consideration of an alleged *Brady*[3] violation.  We granted the motion and directed the circuit court to hold a hearing on the limited issue of whether there had been a *Brady* violation.  The hearing addressed whether Holloway's neighbor, Chris Moore, gave an exculpatory oral and written statement to Officer Smith that was never tendered to Holloway.  The circuit court held the *Brady* hearing on April 29, 2014, and found that there was no *Brady* violation.

## DISCUSSION

*I.     Rule 412 Evidence*

¶10.    Holloway argues that the circuit court committed reversible error when it refused to allow evidence that Catherine willingly engaged in oral sex with Wilkerson in the Kroger parking lot shortly after she had been assaulted in the park.  Prior to trial, Holloway filed a motion entitled, "Motion to Offer Evidence Pursuant to Mississippi Rule of Evidence 412

---

[2] Holloway did not testify during his trial, but recalled Catherine to the stand and interrogated her about a matter that was referenced during the State's case-in-chief after she had testified.  Specifically, she denied that she told anyone that the assault did not occur and affirmed that Wilkerson tried to get her to lie about the incident.

[3] *Brady v. Maryland,* 373 U.S. 83 (1963).

5

and Offer of Proof." In the motion, he alleged the following:

> . . . The Defendant, upon information and belief, would show unto the [c]ourt that on the night in question, prior to the incident giving rise to the allegations in the indictment, the complainant, Catherine, had consensual oral-sexual intercourse with Defendant James David Fortenberry.

> . . . That immediately after the alleged incident the complainant, Catherine, had consensual oral sexual intercourse with Defendant Ellis Wade Wilkerson, Jr. Law enforcement and the State are aware of this allegation through the statements of James David Fortenberry and Ellis Wade Wilkerson, Jr., and, upon information and belief, the complainant, Catherine.

> . . . The complainant, prior to the night of the allegation, had consensual oral and vaginal intercourse with [D]efendants Ellis Wade Wilkerson, Jr., and James David Fortenberry, along with a third individual, while, upon information and belief, in the presence of codefendant Jeremy Wade Holloway. Law enforcement and the State are aware of this allegation through statements, not provided in discovery, of the complainant, Catherine.

> . . . The existence of these prior sexual relationships is admissible under Mississippi Rule of Evidence 616 as to bias, prejudice[,] or interest for or against any party and therefore admissible under Mississippi Rule of Evidence 412(b)(1).

> . . . The existence of the prior sexual encounters with . . . [D]efendant James David Fortenberry is admissible pursuant to [Rule] 412(b)(2)(A).

> . . . The consensual oral sexual encounter with Defendant Wilkerson does not fall within the parameters of guidelines of [Rule] 412[,] as it is not a past sexual encounter from the allegations occurring on or about February 15, 2011, but rather a subsequent act. However, should the Court determine this allegation does fall within the guidelines of [Rule] 412, then it should be admitted as a consensual sexual encounter pursuant to [Rule] 412(b)(2)(B). Additionally, this evidence is admissible under [Mississippi Rules of Evidence] 608 and 616.

¶11. In denying Holloway's motion, the circuit court stated:

> I don't believe that any evidence of any sexual relations that the victim had

6

prior to or after this [sexual assault] is relevant under the case law that I reviewed.

And I believe that it would not be relevant under the facts of this case[;] any consensual intercourse that she had with anybody else prior to this [sexual assault] or after this [sexual assault] would not be relevant to whether or not what occurred during this [sexual assault] was consensual or not . . . . I find that even if it does has [sic] any relevance[,] . . . the prejudicial effect . . . substantially outweighs the probative value and can tend to mislead the jury or confuse the jury. So I'm going to exclude it in that regard.

¶12. After the circuit court's ruling, Holloway argued that the sexual act with Wilkerson happened after the charged offenses and would not qualify for admission under Rule 412 but rather would go to Catherine's state of mind, motive, and intent. The circuit court reiterated that (1) the subsequent consensual-sex act in and of itself was not relevant evidence; and (2) the evidence would not be admitted unless there was testimony adduced for the purposes of showing that Catherine's behavior was inconsistent with that of a rape victim.

¶13. On appeal, Holloway has abandoned his contention that the circuit court erred in not allowing admission of the allegations of Catherine's prior sexual behavior. Rather, he focuses solely on the post-assault sexual conduct with Wilkerson and argues that the circuit court—in denying admission of the evidence regarding the subsequent consensual-sexual act with Wilkerson—improperly characterized the evidence as Rule 412 evidence. He argues that the evidence does not fall under Rule 412 because the act occurred after the sexual assault by Holloway. He also argues that if the subsequent consensual-sexual act is to be analyzed under Rule 412 evidence, then it should have been admitted because it was "constitutionally required" to be admitted. He concedes that there is no Mississippi authority

7

in support of his contention, asserting: "Mississippi does not currently have a standard of admissibility under the constitutionally required mandate [of Rule] 412(b)(1). No case law touches on it, and so this Court is urged to adopt the standard of the United States military courts with regard to this exception to [Rule] 412."

¶14. Rule 412 states:

(a) Notwithstanding any other provision of law, in a criminal case in which a person is accused of a sexual offense against another person, reputation or opinion evidence of the past sexual behavior of an alleged victim of such sexual offense is not admissible.

(b) Notwithstanding any other provision of law, in a criminal case in which a person is accused of a sexual offense against another person, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is:

> (1) Admitted in accordance with subdivisions (c)(1) and (c)(2) hereof and is constitutionally required to be admitted; or
>
> (2) Admitted in accordance with subdivision (c) hereof and is evidence of
>
>> (A) Past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen, pregnancy, disease, or injury; or
>>
>> (B) Past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior with respect to which a sexual offense is alleged; or
>>
>> (C) False allegations of past sexual offenses made by the alleged victim at any time prior to the trial.

* * * *

(d) For purposes of this rule, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which the sexual offense is alleged.

¶15. "This Court reviews the rulings of the trial court admitting or excluding evidence for abuse of discretion." *Aguilar v. State*, 955 So. 2d 386, 392 (¶19) (Miss. Ct. App. 2006) (citing *Ladnier v. State*, 878 So. 2d 926, 933 (¶27) (Miss. 2004)). "An error in the admission or exclusion of evidence is not grounds for reversal unless the error affected a substantial right of a party." *Aguilar,* 955 So. 2d at 392 (¶19); M.R.E. 103(a). "[Rule] 412 is designed to prevent the introduction of irrelevant evidence of the victim's past sexual behavior to confuse and inflame the jury into trying the victim rather than the defendant." *Aguilar,* 955 So. 2d at 393 (¶19) (citing *Hughes v. State*, 735 So. 2d 238, 273 (¶153) (Miss. 1999)).

¶16. Rule 412 clearly excludes the evidence that Holloway sought to have admitted. M.R.E. 412(d); *see also Goodson v. State*, 566 So. 2d 1142, 1150 (Miss. 1990) (opining that "the reasons why it would be unfair to delve into the victim's sexual experience prior to a rape extend equally to post-rape sexual activity"). Holloway asserts that the information was constitutionally required per Rule 412(b)(1), excepting the otherwise excluded evidence.[4]

¶17. Like Holloway, we have not been able to find any Mississippi case law addressing when evidence of a rape victim's pre or post sexual activities is constitutionally required to

---

[4] Holloway points out that this issue is underdeveloped in Mississippi's jurisprudence. However, we look to other jurisdictions for guidance.

9

be admitted under Rule 412(b)(1). However, the Court of Appeals of Oregon addressed this issue in *State v. Beeler*, 999 P.2d 497 (Or. Ct. App. 2000). We find *Beeler* analogous to the case at hand. In *Beeler*, the defendant offered evidence that a rape victim had had consensual sex with a former boyfriend one day after the rape. *Id.* at 499. Because the Oregon Evidence Code (OEC) did not allow such evidence to be admitted, the parties debated whether the evidence was excepted from the prohibition of the OEC because it was constitutionally required to be admitted.[5] In deciding that question, the Court of Appeals of Oregon balanced

---

[5] OEC 412, which tracks the same language found in Mississippi Rule of Evidence 412, provides:

(1) Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.427, or in a prosecution of an attempt to commit such a crime, reputation or opinion evidence of the past sexual behavior of an alleged victim of such crime is not admissible.

(2) Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.427, or in a prosecution of an attempt to commit such a crime, evidence of a victim's past sexual behavior, other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence:

    (a) Is admitted in accordance with subsection (3)(a) and (b) of this section; and

    (b) Is evidence that:

        (A) Relates to the motive or bias of the alleged victim; or

        (B) Is necessary to rebut or explain scientific or medical evidence offered by the state; or

the defendant's constitutional right to present evidence on his behalf against the State's right to exclude evidence of limited relevance. *Id.* at 503. The defense theory in *Beeler* was that because the victim had engaged in consensual sex the day after the rape it was more likely that she also had consented to sex with the defendant and that the victim's actions were not like those of a rape victim. The Court of Appeals of Oregon concluded that the relevance of the evidence was "marginal at best because there are any number of reasons why the complainant might have engaged in subsequent sexual relations." *Id.* It also stated that "there is no meaningful distinction between sexual behavior before and after the crime." *Id.* (citation omitted). Ultimately, the *Beeler* court ruled that the evidence was not constitutionally required. *Id*.

¶18. Holloway attempts to explain that he had a constitutional right to have the evidence of Catherine's post-sexual-assault sexual activities with her boyfriend admitted because the evidence was relevant to whether Catherine consented to have sex with Holloway and

---

(C) Is otherwise constitutionally required to be admitted.

* * * *

(4) For the purposes of this section:

* * * *

(b) "Past sexual behavior" means sexual behavior other than the sexual behavior with respect to which rape, sodomy or sexual abuse or attempted rape, sodomy or sexual abuse is alleged.

11

disproved that she had been raped by him. This is indeed a strange argument. But even so, Holloway admits that even if the evidence were relevant, it still must pass muster under Mississippi Rule of Evidence 403. On this point, he asserts that the probative value is not outweighed by the prejudicial effect.

¶19. The circuit court found that the evidence of Catherine's post-assault sexual activities with Wilkerson was not relevant and, therefore, was not constitutionally required to be admitted. We agree. We cannot find that Catherine's consenting sexual behavior with Wilkerson can be taken to mean that she consented to Holloway's sexual assault. As stated above, the circuit court ruled that the probative value was outweighed by the prejudicial effect and would "tend to mislead . . . or confuse the jury." We also agree with the circuit court on this point. Therefore, we find that the circuit court did not abuse its discretion in excluding evidence of Catherine's post-assault sexual activities with Wilkerson.

II. *Exclusion of Evidence Regarding Alleged Attempts by Catherine to Drop the Charges*

¶20. Holloway argues that the circuit court erred in granting the State's motion that sought to exclude evidence that Catherine attempted to prevent the case from proceeding. Again, we evaluate whether the circuit court abused its discretion in excluding the evidence. Holloway points to the following telephone conversation between Catherine and Jim Kelly, Wilkerson's attorney at the time:

Attorney:  What can I do for you?

Catherine:  I was going to see if the charges were dropped today for

12

> [Wilkerson] to get out and what his bail was.

Attorney: The bail has been lowered to one hundred thousand dollars, but the charges have not been dropped.

Catherine: Okay. Because I've tried to drop them so many times and they said that they don't plan on dropping any—the district attorney —so I don't know how I would go about dropping them.

Holloway has taken this colloquy out of context. The transcript goes on:

Attorney: [I]t might help, Catherine, if you would explain to the authorities why you want to drop the charges. Have you tried to explain it to them?

Catherine: Well, I would rather them have, like, community service and fines . . . .

Attorney: [H]ave you explained to them why - - not what you want the sentence to be, but have you explained to them why you want the charges dropped?

Catherine: No, because I'm stressed, and I've told them that, and I don't want to deal with this.

Attorney: I mean, have you told them - - have you told them that you kind of figured it was [Holloway] anyhow?

Catherine: Well, I said I just didn't want to believe it was.

Attorney: Yeah, but you kind of knew it, didn't you?

Catherine: I felt like it afterwards, after they admitted it.

Attorney: Yeah.

Catherine: I didn't want [the perpetrator] to be a stranger that I didn't know.

Attorney: Right.

13

Catherine: I still understand that they did it, but I still would like to drop the charges.

* * **

Attorney: Have [Holloway and Fortenberry] put any pressure on you [to drop the charges]?

Catherine: They want me to lie about the story.[6]

¶21. Read in context, the evidence is not relevant. Catherine's desire to drop the charges against Wilkerson, her boyfriend, and even Holloway, did not make it more or less probable that Holloway did or did not rape her. *See* M.R.E. 401. This is especially true here, where the evidence is overwhelming that Catherine was lobbied and pressured to lie and say that the assaults never occurred. Furthermore, a "prosecution is initiated by the State's decision that a suspect has violated a criminal statute and must be brought to account. An indictment indicates that a grand jury has agreed." *Armstead v. State*, 805 So. 2d 592, 597(¶20) (Miss. Ct. App. 2001). Although Catherine was reluctant to have Wilkerson imprisoned, it is the State's decision to prosecute and uphold the laws of this state. We cannot find that the circuit court abused its discretion in excluding the evidence of Catherine's attempt to drop the criminal charges.

III. *Weight and Sufficiency of the Evidence*

¶22. Holloway argues that the State failed to prove beyond a reasonable doubt that he was

---

[6] The source of this conversation is from a transcript of an interview with Wilkerson's attorney that was a defense exhibit.

14

guilty of the crimes charged. He contends that the circuit court erred in denying his motion

for a judgment notwithstanding the verdict (JNOV) and his motion for a new trial. The

Mississippi Supreme Court has explained:

> The appropriate inquiry on appeal in considering the trial court's denial of a
> JNOV motion is whether the evidence shows beyond a reasonable doubt that
> the defendant committed the act charged, and that he did so under such
> circumstances that every element of the offense existed; and where the
> evidence fails to meet this test it is insufficient to support a conviction . . . .
> The prosecution must be given the benefit of all favorable inferences that may
> reasonably be drawn from the evidence. Matters regarding the weight and
> credibility to be accorded the evidence are resolved by the jury. We may
> reverse only where, with respect to one or more of the elements of the offense
> charged, the evidence so considered is such that reasonable and fair-minded
> jurors could only find the accused not guilty.

*Taggart v. State*, 957 So. 2d 981, 985-86 (¶8) (Miss. 2007) (internal citation and quotations

omitted). With respect to the denial of a motion for a new trial challenging the weight of the

evidence, the Mississippi Supreme Court has stated:

> [An appellate court] will reverse the trial court's denial of a motion for a new
> trial only if, by doing so, the court abused its discretion. We will not order a
> new trial unless convinced that the verdict is so contrary to the overwhelming
> weight of the evidence that, to allow it to stand, would be to sanction an
> unconscionable injustice. This [c]ourt has also explained that factual disputes
> are properly resolved by a jury and do not mandate a new trial.

*Id.* at 987 (¶11) (internal citation and quotation omitted).

¶23. Here, the evidence established all of the elements of sexual battery. Holloway

admitted to surprising Catherine while wearing a mask, holding a gun to her throat, and

forcing Catherine to perform oral sex on him. He also admitted to motioning with his gun

for Catherine to remove her pants and to having vaginal sex with her. Officer Smith testified

15

that based on his investigation, he secured a warrant for Holloway's DNA that matched the DNA that was swabbed from Catherine during her examination at UMMC.

¶24.    Holloway's defense was that Catherine consented.  As stated, Officer Smith testified that Holloway told him that Holloway was surprised that Catherine "didn't put up more resistance, and it would have felt better to him if he, at least, had had to force her to have sex. And [Holloway] felt that it was consensual because it was so easy."  However, Catherine testified twice that she did not consent to the sexual-assault encounter.  More specifically, when asked at trial whether the sexual assault by Holloway was "against [her] will," Catherine answered in the affirmative.  When asked if she had consented to any of the sexual acts that occurred, Catherine stated that she had not consented to any of them.  Additionally, Catherine testified that during the assault, she did not know the identity of the two masked men who forced her to perform the sexual acts.  We note that Holloway never stated that he identified himself to Catherine during the assault.  After reviewing all of the evidence in the light most favorable to the State, we find that there was sufficient and credible evidence for reasonable and fair-minded jurors to find Holloway guilty beyond a reasonable doubt of two counts of sexual battery and one count of rape.  Based on the record before us, we cannot find that allowing the verdict to stand would sanction an unconscionable injustice. Therefore, this issue is without merit.

   *IV.    Brady Violation*

¶25.    Holloway also asserts that the State withheld an exculpatory statement made by Chris

16

Moore, who lived near Fortenberry and Wilkerson. According to Holloway, Chris overheard Catherine recant her story, specifically stating that "it didn't happen." In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court established the principle that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Our supreme court has held:

> To establish a *Brady* violation[,] a defendant must prove the following: (1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*King v. State*, 656 So. 2d 1168, 1174 (Miss. 1995) (citing *United States v. Spagnoulo*, 960 F.2d 990, 994 (11th Cir. 1992)).

¶26. At the *Brady* hearing that was ordered by this Court, Officer Smith stated that he recalled speaking with Chris but did not recall Chris informing him that Chris had overheard Catherine recanting her story. Officer Smith testified that he did not have a written statement by Chris because Chris did not give him one. Officer Smith explained that he did not "write-up" the discussion because "he did not think the information [Chris] provided was helpful to the investigation."

¶27. Holloway submitted an affidavit, dated June 7, 2013, from Chris, detailing his alleged conversation with Officer Smith that Holloway insisted occurred on or about February 17,

17

2011. In the affidavit, Chris swore that he gave Officer Smith a written statement informing Officer Smith that he had heard Catherine and Wilkerson arguing in the hallway outside their apartment and that he specifically heard Catherine tell Wilkerson that she was going to try to have the charges dropped because "this didn't happen." We note that in Chris's affidavit he recalled that his wife, Lauren, was present and that she saw him write out the statement and witnessed it. However, at the *Brady* hearing, Chris could not recall whether his wife witnessed the statement that he, allegedly, gave to Officer Smith. When his wife was questioned about the statement, she could not recall witnessing or signing a "sheet of paper." She also could not recall the contents of the purported written statement.

¶28. The circuit court ultimately held that the credibility of Officer Smith's testimony outweighed Chris's testimony. The circuit court pointed to the contemporaneous nature of Officer Smith's notes versus Chris's affidavit made more than two years after the events transpired, to which, substantively, his wife could not attest. The circuit court found that the State did not possess a written statement by Chris. Also, the circuit court found that Holloway, by using reasonable diligence, could have obtained whatever information Chris gave to Officer Smith because Chris and his wife were listed as potential witnesses in Officer Smith's report. Holloway does not deny that he had access to Officer Smith's report.

¶29. We cannot find that the circuit court erred in finding that no *Brady* violation occurred because Holloway failed to meet all the prongs established in *Brady*—specifically, that the State possessed evidence favorable to him that he could not obtain himself by utilizing

18

reasonable diligence. Therefore, this issue is without merit. In light of our finding that the circuit court did not err in finding that a *Brady* violation did not occur, the denial of the motion for a new trial is also without error.

## V. Cumulative Error

¶30. Holloway asserts that the errors complained of, cumulatively, require reversal. In *Byrom v. State*, 863 So. 2d 836, 847 (¶13) (Miss. 2003), the Mississippi Supreme Court explained:

> [U]pon appellate review of cases in which we find harmless error or any error which is not specifically found to be reversible in and of itself, we shall have the discretion to determine, on a case-by-case basis, . . . whether such error or errors, although not reversible when standing alone, may when considered cumulatively require reversal because of the resulting cumulative prejudicial effect.

Here, we find no error. Therefore, there can be no cumulative prejudicial effect. "Where there was no reversible error in any part, . . . there is no reversible error to the whole." *Genry v. State*, 735 So. 2d 186, 201 (¶73) (Miss. 1999) (citation and quotation marks omitted).

¶31. **THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF TWO COUNTS OF SEXUAL BATTERY AND ONE COUNT OF RAPE AND SENTENCE OF TWO CONCURRENT TERMS OF THIRTY YEARS FOR THE SEXUAL BATTERY COUNTS AND A CONCURRENT TERM OF FORTY YEARS FOR THE RAPE COUNT, WITH TEN YEARS SUSPENDED AND FIVE YEARS OF SUPERVISED PROBATION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.**

19